# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    *-against-*

**Ind. No. 08-CR-000405**
**(GLS)**

JASON McLAUGHLIN,

        *Defendant.*

## SENTENCING MEMORANDUM

O'CONNELL AND ARONOWITZ
*Attorneys for Defendant*
54 State Street
Albany NY  12207-2501
(518) 462-5601

ANDREW R. SAFRANKO, ESQ.
 *Of Counsel*

Dated: December 6, 2010

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

DISCUSSION .................................................................................................................. 2

    A.    Pre-Sentence Report ..................................................................... 3

    B.    Need to Protect the Public/Future
            Dangerousness ............................................................................. 4

    C.    Consideration of the Guidelines and the
            Purposes for Sentence Warrant a Non-Guideline
            Sentence ....................................................................................... 4

    D.    Jason Fully Cooperated With the Government
            and Provided Substantial Assistance ........................................... 6

    E.    Jason Continues to Have Community Support ........................... 8

    F.    Jason Has Accepted Responsibility For His
            Actions ......................................................................................... 9

    G.    Jason McLaughlin Has Been a Model Prisoner ....................... 9

    H.    Jason Has No Criminal History ................................................. 10

    I.    Additional Requests ................................................................... 10

CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Blakely v. Washington,*
   124 S.Ct. 2531 (2004)............................................................................................ 2

*Gall v. United States,*
   128 S. Ct. 586 (2007)........................................................................................... 3

*Kimbrough v. United States,*
   128 S.Ct. 558 (2007)............................................................................................ 5

*Rita v. United States,*
   127 S. Ct. 2456 (2007)......................................................................................... 3

*United States v. Booker,*
   125 S.Ct. 738 (2005)........................................................................................ 2, 3

*United States v. Denardi,*
   892 F.2d 269 (3d Cir. 1989)................................................................................ 3

*United States v. Jones,*
   158 F.3d 492 (10th Cir. 1998) ........................................................................... 7

*United States v. Koon,*
   518 U.S.81 (1996)............................................................................................... 8

## Federal Statutes

18 U.S.C. § 2422(b) ................................................................................................ 1

18 U.S.C. § 3553(a) ........................................................................................ 2, 3, 11

18 U.S.C. § 3553(a)(2)............................................................................................ 2

18 U.S.C. § 3553(a)(4)............................................................................................ 2

## **Other**

Ellis, *Federal Prison Guidebook* (2008-2010) ................................................................. 10

*The Sourcebook of Sentencing Statistics 2009* ................................................................. 5

## **INTRODUCTION**

On February 24, 2009 Jason McLaughlin pled Guilty to two (2) counts of a four (4) count Indictment charging him with Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a); (e). Mr. McLaughlin is scheduled to be sentenced on December 17, 2010 at 10:00 a.m. in Albany, New York.

Jason McLaughlin's plea was entered pursuant to a written plea agreement reached by Assistant United States Attorney Thomas Spina and Andrew R. Safranko, Esq., counsel for Jason McLaughlin. Although Mr. McLaughlin has not been made any promises or guarantees with regard to his sentence, apart from that which is contained in the Plea Agreement, and any sentence is in the sole determination of the Court, Mr. McLaughlin submits this Memorandum in support of his request for leniency.

This Memorandum is submitted to provide the Court with a broader view of Mr. McLaughlin, his acceptance of responsibility; his family support; his incarceration record; his medical history and his service in the U.S. Army National Guard. There are a number of reasons and circumstances that warrant the mandatory minimum sentence of fifteen (15) years be imposed.

Any sentence imposed by this Court, whether it is the minimum sentence allowed, a guideline sentence, or the statutory maximum sentence will be a severe sentence that will punish Jason for his actions and send a message to society that this type of behavior will not be tolerated. Mr. McLaughlin urges this Court to also consider that he has never been convicted for any crime prior to these charges.

Standing before this Court in disgrace is a 32 year old man who has never been in a situation like this. The true Jason McLaughlin is a cancer survivor, an honorably discharged member of the U.S. Army National Guard, and a loving son from a law-abiding family. Since 2008, Jason has lived with the uncertain consequences that he faces at sentencing. Not once in that time period has Jason done anything that calls into question his character or depicts someone who is likely to commit another offense. For the reasons set forth herein, Mr. McLaughlin should be sentenced to the mandatory minimum sentence of fifteen (15) years.

## **DISCUSSION**

In rendering Jason's sentence, the Court must consider, of course, the seriousness of the crime and the guideline range set forth in the United States Sentencing Guidelines. *See* 18 U.S.C. § 3553(a), *United States v. Booker*, 125 S.Ct. 738, 749 (2005), and *Blakely v. Washington*, 124 S.Ct. 2531 (2004). Instead of being bound by the sentencing guidelines, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider guideline ranges, *see* 18 U.S.C. § 3553(a)(4), but it permits the Court to tailor the sentence in light of other statutory concerns as well. *Booker*, at 750. The Court is equally permitted to consider all circumstances and factors relevant to Mr. McLaughlin's sentence. *See* U.S.S.G. § 1B1.4.

The Court in *Booker* reinforced that sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a). In this regard, the primary directive is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in § 3553(a)(2).

2

In every case, a sentencing court must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. Where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See, United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (arguing that since §3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

The directives of *Booker, Gall v. United States*, 128 S.Ct. 586 (2007), *Rita v. United States*, 127 S. Ct. 2456 (2007) and § 3553(a) make clear that courts may no longer uncritically apply the guidelines, and they may not give the guidelines any greater weight than any of the other § 3553(a) factors. Following the Second Circuit's rationale in *United States v. Dorvee*, F.3d 84 (2d Cir.2010), where the court held that district courts are afforded "broad discretion" in fashioning sentences in child pornography cases, we urge this court to take the same critical view of the guidelines in Production cases. As such, and based upon both the factors set forth herein and in the Pre-Sentence Report, Jason McLaughlin should be sentenced to a sufficient but not greater than necessary sentence. Jason McLaughlin suggests that the appropriate sentence is fifteen (15) years incarceration.

## A.    Pre-Sentence Report

Mr. McLaughlin relies on the factual objections, modifications and clarifications as set forth in the Revised Pre-Sentence Investigation Report; the Addendum to the Pre-

3

Sentence Report dated June 30, 2009; and the Second Addendum to the Pre-Sentence Report dated July 7, 2009.

The Defendant joins in the government's position that the appropriate adjusted starting point for the guideline calculation is a level 42, as a level 43 calculation establishes a sentence beyond the statutory maximum allowable penalty. Before the 5k1.1 motion is applied, the Defendant's guideline range is 360-life.

**B.    Need to Protect the Public/Future Dangerousness**

As a result of his conviction, Mr. McLaughlin sought treatment from Dr. Richard D. Sutter while incarcerated at the Albany County Correctional facility.    Dr. Sutter's letter is attached as Exhibit "A". Notably, Dr. Sutter concludes that with treatment Jason McLaughlin is a good candidate for successful rehabilitation and a low chance of becoming a recidivist. It is noteworthy that Dr. Sutter voluntarily prepared this letter for the Court's consideration, as his opinion is truly objective. As such, Dr. Sutter's findings should be considered and afforded great weight by the Court in determining the appropriate sentence for Jason McLaughlin.

**C.    Consideration of the Guidelines and the Purposes for Sentence Warrant a Non-Guideline Sentence**

The guidelines, as adjusted in the PSR with acceptance of responsibility, call for a prison term of between 360 months to life.[1]    It is my understanding that the U.S. Attorney's Office is making an application pursuant to U.S.S.G. 5K1.1 for a three (3)

---

[1] As set forth *supra*, the Defendant joins in the government's position that the appropriate adjusted starting point for the guideline calculation is a level 42, as a level 43 calculation establishes a sentence beyond the allowed statutory maximum penalty.

4

level downward departure. As such, Mr. McLaughlin's guideline calculation calls for a term of imprisonment of 262 to 327 months. In the paragraphs that follow the defense argues that, as applied to Mr. McLaughlin's case, the guidelines overstate the necessary punishment.

While the defense is in no way minimizing or trivializing Mr. McLaughlin's conduct, the guidelines as they apply to this case equate to a harsh and excessive sentence. In 2009, according to *The Sourcebook of Sentencing Statistics 2009*, the mean sentence in a sex abuse case was 92.6 months with a median was 57 months, while the mean for pornography/prostitution cases was 117.8 months with a median of 78.0 months. Jason McLaughlin's guideline range and mandatory minimum far exceeds these levels. See pullout from Sourcebook attached as Exhibit "B". These sentencing increases are not related to an empirical approach based on data as required by *Kimbrough v. United States*, 128 S.Ct. 558, 567 (2007).

Congress increased the child exploitation guidelines based on political pressure and not based on empirical research and data. As a result, the child pornography guidelines violate the dictates of 18 U.S.C. 3553 which require a sentence be sufficient but not greater than necessary for deterrence and punishment.

District Court Judges have granted non-guideline sentences based in part on the theory that the guidelines have inappropriately been heightened in child pornography cases. Mr. McLaughlin urges the Court to impute the same rationale in the production arena. Mr. McLaughlin served his country admirably and is a cancer survivor. He is not a danger to the community. The mandatory minimum sentence is still a significant punishment and will allow Mr. McLaughlin time to return to the community after his

incarceration; maintain the appropriate level of medical care; and to receive necessary sex offender counseling and treatment.

### D.    Jason Fully Cooperated With the Government and Provided Substantial Assistance

Pursuant to the Plea and Cooperation Agreement, Jason had to provide complete, truthful cooperation with the United States in the investigation and prosecution of others. This cooperation was to include all information of his and others' activities, cooperating fully in any manner requested, and neither attempting to protect nor falsely implicate any person. From the commencement of his cooperation to the present, Jason has fully complied with these terms.

Jason was debriefed by the Government on at least five occasions.[2] Once Jason began to cooperate, he became a team player for the government and participated in any way possible to assist the government. Due to his cooperation, a person involved with possessing child pornography has been convicted and another is pending prosecution.[3] In addition, Jason remains willing to fulfill his responsibilities under the Cooperation Agreement, if requested by the Government. As the Court is aware, sentencing in this case has been adjourned on several occasions to allow Jason's cooperation to come to fruition. Unfortunately, through no fault of his own, many of the leads are still ongoing.

The Government has requested this Court grant a three (3) level downward

---

[2] For the sake of the Defendant and the agents involved, specific names are being withheld. However, the Defendant, through his attorney, is willing to provide the Court with full details, *in camera*, regarding meetings.

[3] Again, Jason is willing to go into further detail regarding these meetings and conversations. Upon information and belief, information provided by the Defendant has brought about an arrest.

departure based on Jason's substantial cooperation. While Jason is appreciative of the government's filing of the 5K1.1 downward departure motion, Jason believes that his level of cooperation warrants additional adjustment. Three (3) levels is not sufficient for helping with at least one (1) conviction and one (1) pending arrest. In addition, the information provided by Jason was sufficient for the United States Attorneys' Office in Massachusetts to obtain a search warrant which the U.S. Attorney's Office did not act upon, despite having an open investigation into this particular individual. Jason should be awarded credit as such an arrest or conviction occurred.

In addition to these specific acts, Jason provided the agents and the U.S. Attorney's office an insiders view into the use of image boards. This information was particularly useful as this was a mechanism and arena that the agents involved in this case were not familiar with in relation to child pornography locations and investigations. Jason provided a step-by-step guide to access these image boards. Since access or a password was necessary to enter into an image board, the agents were unable to view the materials on these boards. Jason advocated for the ability to help the undercovers to obtain the necessary passwords, but was not allowed to do so.

Even prior to *Booker* and its progeny, the federal sentencing guidelines were designed to deal with "typical" cases. *See* U.S.S.G. Chap. 1, Part A. However, the Sentencing Commission explicitly recognized that unusual or atypical cases would arise, and therefore expressly reserved some degree of flexibility to the sentencing court. *United States v. Jones*, 158 F.3d 492, 496 (10th Cir. 1998). Indeed, the United States Sentencing Guideline states, *inter alia*, that:

7

> The Commission intends the sentencing courts to treat each guideline as carving out a single "heartland," a set of typical cases embodying the conduct that each guideline describes. *When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the Court may consider whether a departure is warranted.* [emphasis added]

U.S.S.G. Chap. 1, Part A, Comment 4(b). Indeed, departure decisions "embod[y] the traditional exercise of discretion by a sentencing court." *United States v. Koon*, 518 U.S.81, 82 (1996).

This case presents the "unusual or atypical" case that the Sentencing Commission had in mind when it reserved some degree of flexibility to the sentencing court. Jason has not at any time violated his cooperation agreement. Jason's cooperation makes this case unusual and atypical enough to remove it from the "heartland" of cases the guidelines are designed for.

## E.    Jason Continues to Have Community Support

Jason's family and friends have remained supportive despite his current legal difficulties. Significantly, letters of support were written by people who knew the charges and conviction, yet nevertheless were willing to come forward -- in a public forum -- to offer their support.[4]

It is a common observation that in times of trouble, people tend to distance themselves from a convicted individual. It speaks volumes about Jason's overall

---

[4] The letters referenced herein were letters that Counsel received copies of, all of which are attached as Exhibit "C".

8

character and virtues that people continue to support him.

## F.    Jason Has Accepted Responsibility For His Actions

As demonstrated by his plea, allocution and statement to the Court (see Exhibit "D"), Jason accepted full responsibility for his actions and has shown a readiness to face the consequences of those actions.    Similarly, he fully admitted his involvement to Probation Officer Angela Bennett, who agrees that Jason accepted responsibility.  (See Pre-Sentence Investigation Report, ¶¶ 63, and 64).

Although acceptance of responsibility is a factor built into the guidelines, Jason's unqualified acceptance of responsibility is so unique as to take it out of the "heartland" of cases. More specifically, most defendants will, albeit reluctantly, accept responsibility because they recognize that it is in their best interest under the guidelines to do so.  Still, it often is done grudgingly.  In Jason's case, there is no question that he fully and truly accepted responsibility and was willing to face what are uncertain consequences.  He accepted responsibility from the moment he was arrested and has been cooperating with law enforcement from the first moment he was afforded the opportunity.  Jason is truly remorseful for his behavior.

## G.    Jason McLaughlin Has Been a Model Prisoner

Jason has been a model prisoner both at the Albany County Correctional Facility and Montgomery County Correctional Facility since he was arrested and incarcerated in May, 2008.

**H.     Jason Has No Criminal History.**

As demonstrated by Jason's criminal history category of one, stated in the Presentence Investigation Report, Mr. McLaughlin has no past criminal history. Jason's conduct was an aberration from an otherwise respectable, law abiding life, and Mr. McLaughlin hopes this Court will consider these factors in imposing its sentence.

**I.     Additional Requests**

Jason McLaughlin requests the Court to make the following recommendations to the Bureau of Prisons that he be:

   (a)     placed in the Federal Medical Center at Devens in Ayers, Massachusetts, and

   (b)     assigned to a minimum security facility.

With respect to facility designation, the Bureau of Prisons makes the ultimate determination.   However, the Bureau of Prisons does try to [accommodate/honor] a judge's recommendation. *See* Ellis, *Federal Prison Guidebook*, at 2-4, 5 (2008-2010). Placement in Devens is important because the Sex Offender Program is offered at that facility. In addition, FMC Devens will be able to handle Mr. McLaughlin's medical needs as his cancer and remission must be monitored on a routine basis.

10

## CONCLUSION

For the reasons set forth herein, I request that Jason McLaughlin be granted the mandatory minimum fifteen (15) year prison sentence; and respectfully submit that such a sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  In addition, I request a minimum period of incarceration followed by release to a halfway house and home confinement.

DATED:  December 6, 2010

O'CONNELL AND ARONOWITZ
By:

Andrew K. Safranko, Esq.
Bar Roll No. 510803
Attorneys for Defendant
Office and P.O. Address
54 State Street
Albany NY  12207-2501
(518) 462-5601

G:\DATA\ATTORNEY\SRC\McLaughlin, Jason\MLsentencing-CM.docx

11

## CERTIFICATE OF SERVICE

I, Andrew R. Safranko, Esq., attorney of record for the above-named defendant, hereby certify that on December 6, 2010, I electronically filed the foregoing Sentencing Memorandum with the Clerk of the District Court using the CM/ECF system, which sent electronic notification of such filing to the following:

Thomas Spina, United States Department of Justice

DATED:        December 6, 2010

s/ **Andrew R. Safranko, Esq.**
Andrew R. Safranko Bar Number: 510803
Attorney for Defendant
O'CONNELL AND ARONOWITZ
54 State Street
Albany NY  12207-2501
Telephone: (518) 462-5601
Fax: (518) 462-2670
E-mail: asafranko@oalaw.com

G:\DATA\ATTORNEY\ARS\McLaughlin, Jason\CERTIFICATE OF SERVICE.doc





ALBANY COUNTY
DEPARTMENT OF MENTAL HEALTH
ADULT FORENSIC SERVICES
ALBANY COUNTY CORRECTIONAL FACILITY
840 ALBANY SHAKER ROAD
ALBANY, NEW YORK 12211
(518) 869-2683 -- FAX (518) 869-2704

MICHAEL G. BRESLIN
COUNTY EXECUTIVE

ROBIN B. SIEGAL, Ph.D.
EXECUTIVE DIRECTOR

January 21, 2010

Andrew Safranko
O'Connell and Aronowitz
54 State Street
Albany, NY  12207

Dear Mr. Safranko,
Please find below information that you may want to share with the court before Mr. McLaughlin's sentencing.

Mr. McLaughlin has been under my care at the Albany County Correctional Facility since 07/02/2008. During that time he has been an active participant in his treatment. Mr. McLaughlin revealed during treatment that he was sexually abused as a child by a neighborhood boy. The discussion of the incident, interestingly, focused not on the abuse by the older neighborhood boy but rather on the abuse he experienced during the investigation by the detective. He reported that the detective insisted that he strip naked while the officer took multiple flash pictures of him. Mr. McLaughlin reported that it was that event that he found even more traumatic then the abuse by the older child. It is documented in psychological literature that an individual who experiences a traumatic event may unconsciously try to "undo" that event by recreating it. It is my opinion that the crime he is charged with is an example of an "undoing". The actions that Mr. McLaughlin took and those that he did not take during his crime strongly support an interpretation of an act which was an attempt to undo the trauma that he experienced as a child. Mr. McLaughlin's crime appears to be a result of unresolved traumatic stress and not deviant sexual interests. Such an interpretation also suggests that Mr. McLaughlin is a good candidate for successful rehabilitation. It is my considered clinical opinion that Mr. McLaughlin would benefit from treatment for Post Traumatic Stress Disorder which appears to be the basis for his crime. It is also believed that with treatment the chances of Mr. McLaughlin becoming a recidivist are low.

Richard D. Sutter, Ph.D.
NYS Licensed Psychologist #8310
Coordinator Adult Forensic Unit at
The Albany County Correctional Facility

RECEIVED

JAN 26 2010

O'Connell and Aronowitz, P.C.
For: NYS | RF      DW

# B

## Table 13

## AVERAGE SENTENCE LENGTH IN EACH PRIMARY OFFENSE CATEGORY[1]
### Fiscal Year 2009

| PRIMARY OFFENSE | Mean Months | Median Months | N |
|---|---|---|---|
| TOTAL | 46.8 | 24.0 | 81,347 |
| Murder | 274.5 | 270.0 | 93 |
| Manslaughter | 66.6 | 42.0 | 59 |
| Kidnapping/Hostage Taking | 212.8 | 168.0 | 41 |
| Sexual Abuse | 92.6 | 57.0 | 478 |
| Assault | 37.3 | 24.0 | 658 |
| Robbery | 80.0 | 60.0 | 1,011 |
| Arson | 58.2 | 60.0 | 60 |
| Drugs - Trafficking | 77.9 | 60.0 | 23,931 |
| Drugs - Communication Facility | 33.1 | 30.0 | 508 |
| Drugs - Simple Possession | 4.2 | 0.1 | 757 |
| Firearms | 85.4 | 57.0 | 8,239 |
| Burglary/B&E | 23.5 | 24.0 | 36 |
| Auto Theft | 53.0 | 27.0 | 77 |
| Larceny | 7.3 | 1.0 | 1,591 |
| Fraud | 21.8 | 10.0 | 7,617 |
| Embezzlement | 8.8 | 4.0 | 471 |
| Forgery/Counterfeiting | 15.6 | 12.0 | 887 |
| Bribery | 21.1 | 12.0 | 171 |
| Tax | 15.7 | 12.0 | 633 |
| Money Laundering | 32.9 | 18.0 | 812 |
| Racketeering/Extortion | 94.2 | 51.0 | 635 |
| Gambling/Lottery | 7.2 | 6.0 | 62 |
| Civil Rights | 26.3 | 8.0 | 63 |
| Immigration | 17.4 | 12.0 | 25,924 |
| Pornography/Prostitution | 117.8 | 78.0 | 1,969 |
| Prison Offenses | 15.5 | 12.0 | 445 |
| Administration of Justice Offenses | 15.2 | 8.0 | 998 |
| Environmental/Wildlife | 4.2 | 0.0 | 231 |
| National Defense | 47.3 | 27.0 | 67 |
| Antitrust | 13.2 | 9.0 | 21 |
| Food & Drug | 4.1 | 0.0 | 80 |
| Other Miscellaneous Offenses | 6.2 | 0.0 | 2,722 |

[1]Of the 81,372 cases, 25 were excluded due to missing or indeterminable sentencing information. Sentences of probation only are included in this table as zero months of imprisonment. In addition, the information presented in this table includes time of confinement as described in USSG §5C1.1. Descriptions of variables used in this table are provided in Appendix A.

SOURCE: U.S. Sentencing Commission, 2009 Datafile, USSCFY09

C

# Our Lady of Angels Friary

20 Willett Street

Albany, New York 12210

Phone: (518) 432-0114

June 1, 2009

HONORABLE JUDGE SHARPE
c/o Andrew Safranko
O'Connell and Aronowitz
54 State Street
Albany, New York 12207

Dear Judge Sharpe:

My name is Brother Kenneth Lucas, OFM Conv. I am a Franciscan Friar and an acquaintance of Jason McLaughlin who is presently awaiting trial on charges of production of child pornography.

As I have gotten to know Jason, I can attest that he is very aware of the seriousness of his crime, as well as the complexity of his own childhood circumstances that have led to his involvement in such inappropriate and unacceptable activity.

I know that Jason is very remorseful for his offense and will benefit from continued psychological and other medical assistance. As you consider his case, I would simply ask that you consider as well his lack of any previous criminal activity, his military service and his incentive to seek appropriate medical attention to his illness.

Thank you for your time and consideration.

Sincerely,

Brother Kenneth H. Lucas, OFM Conv.

To Whom It May Concern,

I, Patricia Evans am writing this letter for my son Jason McLaughlin.

I liked to start off by saying that I was hurt and saddened by what my son did, but I still love him. Jason is a very caring individual. He was always there when I needed him.

Jason has made a mistake ,which effects everyone involved, but he will also have to live with it for the rest of his life. I believe that the harsh sentence that Jason will get is not fair for what he did. He should be punished but with less jail time and psychiatric help. This was Jason first conviction. Everyone deserves a second chance in Life, Jason should be no exception.

I would like to thank the court for giving me the opportunity to voice my opinion on this matter.

Sincerely,

Patricia Evans

Justice G. Sharpe

Sir, My name is Thomas McLaughlin. I am a police officer in the Town of   Colonie, and have been for 28 years.

This November 16th, 2010 my son Jason will stand before you for sentencing on child porn charges. The crimes which he had pled guilty to are horrific in nature, and I in no way condone his conduct. I agree he should be punished for what he did, however I am asking you to please take in consideration the following before sentencing; when Jason was younger, about 8 years old, he was sodomized by a neighborhood boy who lived 2 doors down from us. I as his father was very angry to say the least. I contacted the police (my dept) and the young man was arrested. I put my faith in the system. My family than endured weeks of harassment by the grandfather who had custody of the young man. He was sentenced to two years probation, and his case was sealed. The boy was 13. In 2006 Jason was diagnosed with cancer and I thought my world was going to end. I was crushed. I took care of him for the months he was going through chemo. I thought I was going to loose him. He was stage 3b. With the help of the Drs. From NYOH, and most important Dr. Charles Weissman he pulled through.

I have worked in my community, received awards, commendations letters from the community, and never once have I asked for anything in return. I am pleading with you to take my letter in consideration when you pass sentencing. I know the CPL in New York, and I am getting an education on the Federal system. I don't want to compare apples and oranges, but I do ask for you to please take in consideration coming off the mandatory minimum. I am 54 years old. I would like to spend time again with my son before I get too old to enjoy my time with him. I almost lost him once before, I don't want to lose him now. He is worth saving. I am asking you to take my request, the only request I ever asked in all my years, to show mercy.
Thank you sir for your time in this matter.

April 5 2010

To Whom It May Concern:

Before I give my opinion I find it important that I should explain my connections and history with Jason McLaughlin. When I first met Jason I was in fifth grade, I enjoyed the time he came to visit us. I definitely looked up to Jason and was surprised to hear about what he had done. When I was told that I was involved I tried to remember any time that I had been scared or suspicious of him. I really don't remember anything that had happened. The only time I was aware that anything had happened was when the ice agents spoke to me. As you know I am writing this in order to show you what I think on this issue.

I am not sure if my opinion should count but, I believe that Jason would be better off with psychiatric help and not a jail sentence. I think that if he were to have a jail sentence, he would not receive the proper help that he needs. If Jason is able to receive help he could move on to live normal life and therefore understand the extent of his actions. I am thankful for being able to express my point of view on this issue.

Sincerely,

Karen Krill

JESSICA A. MORCK
Notary Public, State of New York
Qualified in Albany County
No. 01MO6188053
Commission Expires June 2, 2012

RECEIVED
APR  9 2010
O'Connell and Aronowitz, P.C.
For:

April 7, 2010

To whom it may concern

       Since the beginning Jason McLaughlin and I had a close relationship. We were interested in many of the same things and got along well together. He was like any normal person. No one would have suspected anything, especially me. Although I really wasn't aware of what was happening I was very surprised when I found out.

       Like many people Jason deserves a second chance, not jail time. I believe Jason would benefit more from getting psychiatric help rather than being in jail. Everyone deserves a second chance to learn from their mistakes and Jason is no exception. I thank you for giving me the opportunity to voice my opinion on this matter.

Sincerely,
Rachel Krill

*Rachel Krill*

4/7/10

JESSICA A. MORCK
Notary Public, State of New York
Qualified in Albany County
No. 01MO6188053
Commission Expires June 2, 2013

# D

I want to take this time to apologize. first and foremost to my victims. I am sorry that I betrayed them by doing what I did. I am completely ashamed of what I've done to you and not a day goes by that I don't regret it. My regret does not come from the fact I was caught, but rather from the fact that I failed to admit I had a problem and did nothing about it. My regret also stems from the fact that I hurt you by my selfish actions. I wish I never did what I did, and I wish I had the foresight to seek professional help. I want to apologize to my family and friends I've let down, embarrassed and disappointed. I want to also apologize to my community and my army unit whom upon my diagnosis of cancer came together and assisted me emotionally and financially. I am certain that my actions were a great disappointment to them. I knew I had a problem and was afraid and ashamed to ask for help. I didn't know where to turn to. During my incarceration I taken the time to involve myself in treatment with a psychologist. I feel as though I've made progress with identifying the root cause of my issues which traces back to my own experiences as an abused child. I'm not offering excuses for my actions, but rather an explanation. I plan on continuing my therapy throughout my period of incarceration.. During my time in jail I have also found religion. Throughout my life I've never recognized or had faith in anything, however approximately a year ago I became a born again Christian. I've realized my sins, admitted them and hope all those I've let down, hurt, and betrayed have forgiven me as God has. Through my faith and professional treatment I truly believe that I can battle and defeat the demons in my life. I am not a bad person your honor I've just made some very poor choices. Choices that have ruined my life and will never occur again. I've realized my actions were not worth the consequences I have thus far beating cancer, and I know with my support network of family and friends can too defeat those actions that caused me to be here today. I 've made a promise to God, and I make that same promise to this court today that I will never engage in this type of activity again. I beg this court to give me a second chance to be a productive citizen again, and to show me mercy in its sentencing decision. I also want to mention that from day one I have accecepted responsibility for my actions. While I'm here today on a negative note, I want to bring to light the good I've also done from volunteer work with various organizations to proudly wearing the uniform of the United States Army. I ask the court that these factors also be considered in my sentencing.